UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| JERRY CASTILLO, JR., | § | No. SA:13-CV-1181-DAE |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| DAVID MUNOZ, UNDERCOVER | § | |
| OFFICER "NICK," and SAN | § | |
| ANTONIO POLICE DEPARTMENT, | § | |
| | § | |
| Defendants. | § | |

ORDER DENYING MOTION TO REVOKE SETTLEMENT AGREEMENT

Before the Court is a motion filed by Jerry Castillo, Jr. ("Plaintiff") to revoke the settlement agreement entered into by Plaintiff, San Antonio police officers David Munoz ("Munoz") and Duane Killian ("Killian"), and the City of San Antonio ("City") (Dkt. # 36). Plaintiff attacks the validity of the agreement on the basis that his consent to the agreement was not voluntary. The Court held an evidentiary hearing on Plaintiff's motion on March 4, 2015. At the hearing, Plaintiff represented himself pro se; Mark Ralls, Esq. represented Munoz and Killian; and Mark Kosanovich, Esq. represented the City. After careful consideration of the evidence presented at the hearing and submitted with Defendants' memoranda, the Court **DENIES** Plaintiff's motion to revoke the settlement agreement.

1

BACKGROUND

On December 30, 2013, Plaintiff filed a pro se § 1983 action against the San Antonio Police Department and officers Munoz and Killian asserting that he was strip-searched in public without probable cause by Munoz and Killian. (Dkt. # 1.) On March 11, Magistrate Judge Primomo issued a Memorandum and Recommendation recommending that Castillo's claims against the City of San Antonio be dismissed. (Dkt. # 16.) The Court issued an order adopting Judge Primomo's Memorandum and Recommendation on May 19, 2014 (Dkt. # 25), but subsequently vacated the order after Castillo asserted he had believed he would have the opportunity to object to the Memorandum and Recommendation at a later time (Dkt. # 28). On July 24, 2014, all parties entered a stipulation of dismissal, and the case was dismissed with prejudice. (Dkt. # 32.)

On December 5, 2014, Plaintiff filed a motion to revoke the settlement agreement and reopen his suit on the basis that he was recently diagnosed with disabilities, is not capable of making his own decisions, and that counsel for the defendants took advantage of him.[1] (Dkt. # 36.) Munoz and Killian filed a response in opposition to the motion on December 18, 2014 (Dkt.

---

[1] Plaintiff's motion does not specify under what rule he seeks relief. The Court construes his motion as one for relief under Federal Rule of Civil Procedure 60(b). Plaintiff's allegation that he was coerced by Defendants' counsel into signing the settlement agreement would appear to fall under Rule 60(b)(3). Rule 60(b)(6) applies to Plaintiff's claim that a recent diagnosis of disability rendered him unable to make his own decisions. The Court will discuss each in turn.

# 37), and the City filed a response in opposition to the motion on December 30, 2014 (Dkt. # 38).  As required by Mid-South Towing Co. v. Har-Win, Inc., 733 F.2d 386, 390 (5th Cir. 1984), the Court held an evidentiary hearing on disputed issues of the validity of the agreement on March 4, 2015.

## LEGAL STANDARDS

A plaintiff may dismiss an action with prejudice by filing a stipulation of dismissal signed by all parties who have appeared stating that the dismissal is with prejudice.  Fed. R. Civ. P. 41(a)(1)(A)(ii), (a)(1)(B).  Such dismissal is "effective upon filing notwithstanding any other action by the district court." SmallBizPros, Inc. v. MacDonald, 618 F.3d 458, 462 (5th Cir. 2010).  However, a district court retains jurisdiction over a voluntarily dismissed action to entertain a later motion for relief under Federal Rule of Civil Procedure 60(b).  See Yesh Music v. Lakewood Church, 727 F.3d 356, 360–61 (5th Cir. 2013).

Under Rule 60(b), the court may relieve a party from a final judgment, order, or proceeding based on fraud, misrepresentation, or misconduct by an opposing party, or for any other reason that justifies relief.  Fed. R. Civ. P. 60(b)(3), (6).  A party seeking relief based on misconduct by the opposing party must show by clear and convincing evidence that (1) the adverse party engaged in fraud or other misconduct, and (2) this misconduct prevented the moving party from fully and fairly presenting his case.  Hesling v. CSX Transp., Inc., 396 F.3d

632, 641 (5th Cir. 2005).  Relief under the catch-all provision of Rule 60(b)(6) is granted "only if extraordinary circumstances are present."  Id. at 642.

## DISCUSSION

Plaintiff's motion seeks to revoke the settlement agreement entered into with Defendants and reopen his suit.  Under the agreement, entitled "Full & Final Release of All Claims and Indemnity Agreement," Plaintiff agreed to settle all claims in exchange for $500.  (Dkt. # 37, Ex. A.)  The definition of "All Claims" appears on the first page, and states that "'All Claims' means all existing and future claims against Defendants . . . ."  (Id. At 1.)  "Defendants" are defined immediately above, in all capitals, as "Officer David Munoz and Duane Killian" and "The City of San Antonio."  (Id.)  The stipulation of dismissal filed with the Court was also signed by Plaintiff.  (Dkt. # 35.)

"Compromises of disputed claims are favored by the courts."  Mid-South Towing, 733 F.2d at 391.  "One who attacks a settlement must bear the burden of showing that the contract he has made is tainted with invalidity."  Id. at 392.  Where the substantive rights and liabilities of the parties to the action derive from federal law, the enforceability or validity of settlement agreements are determined by federal law.  Borne v. A. & P. Boat Rentals No. 4, Inc., 780 F.2d 1254, 1256 (5th Cir. 1986).  "[T]he federal common law of contracts . . . uses the core principals of the common law of contracts that are in force in most states."

4

Smith v. United States, 328 F.3d 760, 767 n.8 (5th Cir. 2003) (internal quotation marks omitted).

I.   Claim that Agreement was Product of Coercion

Plaintiff first argues that the settlement agreement is invalid because his assent was coerced by Defendants' counsel.  Assent to a contract is invalid where the assent was physically compelled, induced by an improper threat by the other party that leaves the victim no reasonable alternative, or procured through undue influence by the other party.  Restatement (Second) of Contracts §§ 174, 175(1), 177 (1981).

None of the testimony or other evidence submitted by the parties suggests circumstances involving physical compulsion or threat.  Neither does the evidence support a claim of undue influence.  Mark Ralls ("Ralls"), counsel for Munoz and Killian, negotiated the settlement agreement with Plaintiff, who was not represented by counsel.  Ralls testified at the hearing that the settlement negotiations were initiated by Plaintiff and consisted of three or four telephone conversations.  Ralls testified that Plaintiff initially made demands in the range of $70,000, and Ralls responded that his clients could not settle for that amount of money.  When Plaintiff asked whether Defendants were going to make an offer, Ralls told him that Ralls was authorized by the City to offer $500 to settle Plaintiff's action, and Plaintiff subsequently agreed to settle for that amount.

Plaintiff testified that he did not understand that the $500 was in full satisfaction of his claims. Ralls testified, however, that he was clear in his discussions with Plaintiff that the $500 would be a "full and final" settlement of Plaintiff's claims against all three Defendants. When the Court asked Plaintiff whether Ralls or anyone else had told him that the $500 he received under the settlement was only partial payment for his claims, Plaintiff answered "no." Plaintiff also testified that he understood that Ralls was not his lawyer, and understood that Ralls represented the officers that Plaintiff sued.

Summer Adair ("Adair"), Ralls's legal secretary, and Philip Leal ("Leal"), Ralls's litigation paralegal, testified that they were present when Plaintiff executed the settlement. Each testified that Plaintiff had a full opportunity to review the agreement, and did so before signing. Plaintiff's own testimony was that he glanced through the agreement, but did not read it. Adair and Leal further testified, and Plaintiff confirmed, that they did not discuss the contents of the agreement with Plaintiff, and that Plaintiff did not ask any questions. Ralls was not present when Plaintiff signed the agreement.

While the Court is sensitive to the fact that Plaintiff was unrepresented in the settlement negotiations, the evidence does not show that his assent to the settlement agreement was the result of undue influence exerted by Defendants or their counsel. Plaintiff testified that he accepted $500 because he

6

needed money for transportation; this, and not any misconduct on the part of counsel, appears to be the reason that Plaintiff initiated settlement discussions and ultimately agreed to settle.  The Court further finds that the settlement amount of $500 was reasonable in light of Ralls's testimony that his clients denied Plaintiff's allegations in the underlying suit and viewed the action as frivolous.[2]  Plaintiff has not offered the clear and convincing evidence of misconduct required for relief under Rule 60(b)(3), and his argument to revoke the settlement agreement based on coercion therefore fails.

II.     Claim that Plaintiff Did Not Have Capacity to Assent

Plaintiff further argues that he did not have the capacity to assent to the agreement based on disability or mental defect.  A natural person who manifests assent to a transaction has full legal capacity to incur contractual duties thereby unless he is under guardianship, an infant, mentally ill or defective, or intoxicated.  Restatement (Second) of Contracts § 12(2).  A party may void a contract based on mental illness or defect if (a) he is unable to understand in a reasonable manner the nature and consequences of the transaction, or (b) he is

---

[2] While both counsels' recollection of the facts of the underlying suit was less than clear, there was no dispute that at the time Plaintiff alleges he was strip-searched, police officers found narcotics in Plaintiff's vehicle, arrested Plaintiff, and took him into custody.  In addition to Munoz and Killian, numerous other officers were present at the scene of the traffic stop.  Defendants categorically deny that they engaged in the conduct alleged by Plaintiff.  Plaintiff stated that the criminal proceeding arising out of the vehicle stop, one of two narcotics-related criminal cases pending against Plaintiff, is ongoing.

7

unable to act in a reasonable manner in relation to the transaction and the other party has reason to know of his condition.  Id. § 15(1).

With regard to his medical condition, Plaintiff testified that he was recently hospitalized, requires a twenty-four hour nurse, and has been diagnosed with schizophrenia, which he believes was caused by the alleged strip-search by Munoz and Killian.  Plaintiff submitted no supporting documentation for his assertions.[3]  Ralls testified that Plaintiff seemed competent during the course of their negotiations, and states in his affidavit that "all my conversations with Mr. Castillo led me to believe he understood our negotiations and the effect of the settlement of his lawsuit for the sum of $500.00."  (Dkt. # 37-3 at 2.)  Adair and Leal each testified that Plaintiff did not appear upset or in any way out of sorts at the time he signed the agreement.  At the hearing itself, Plaintiff appeared competent and ably participated by giving testimony and asking questions of Ralls.

While mental incapacity rendering assent to a settlement agreement invalid would be the sort of extraordinary circumstance that would justify granting relief under Rule 60(b)(6), Plaintiff has not met his burden of showing such invalidity here.  Plaintiff's claim of incapacity, without any additional supporting evidence, is insufficient to grant a motion to revoke an otherwise-valid settlement agreement.  See Lopez v. Kempthorne, No. H-07-1534, 2010 WL 4639046, at *4

---

[3] Plaintiff was not empty-handed at the hearing; he did bring a copy of the police report of the incident that formed the basis for his suit.

(S.D. Tex. Nov. 5, 2010) (denying motion to vacate settlement agreement where plaintiff's assertions of duress were supported by no independent admissible evidence); see also Del Bosque v. AT&T Adver., L.P., 441 Fed. App'x 258, 261–62 (5th Cir. 2011) (non-precedential) (affirming the district court's rejection of plaintiff's incapacity defense where the only admissible evidence offered by plaintiff was her own testimony as to her state of mind during settlement negotiations). Considering all of the evidence presented at the hearing and the affidavits submitted by Defendants, Plaintiff has not shown that he was unable to reasonably understand the consequences of his agreement with Defendants, or that he was unable to act in a reasonable manner and that Defendants had reason to know of his condition.

Finally, to the extent that Plaintiff argues that he did not understand that the $500 he received was in full settlement of his claims against Defendants, unilateral mistake is not enough to invalidate the agreement. Mid-South Towing, 733 F.2d at 391–92. There is no evidence of misrepresentation or misconduct on the part of Defendants or their counsel that could have caused Plaintiff's misunderstanding, and Plaintiff's mistake therefore does not render the agreement invalid.

9

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's motion to revoke the settlement agreement and reopen his suit.

**IT IS SO ORDERED.**

**DATED:** San Antonio, Texas, March 6, 2015.

_____
David Alan Ezra
Senior United States Distict Judge